James R. ROOP, as the administrator of the estate of Patricia G. Roop, James R. Roop, as the guardian of Linus Roop, and James R. Roop, individually and in his own right, husband of Patricia G. Roop, Plaintiffs,

v.

The UNITED STATES PARK SERVICE, a federal governmental agency; Roger Kennedy, a National Director of the National Park Service; B.J. Griffith, Mid–Atlantic Regional Director of the National Park Service; Bruce Babbitt, Secretary of the Interior for the National Park Service and any other "John Doe" departments, agencies, entities or agents now known at this time, Defendants.

No. 5:94–0749.

United States District Court,
S.D. West Virginia,
Beckley Division.

April 20, 1995.

Belinda S. Morton, Fayetteville, WV, for plaintiffs.

Rebecca Betts, U.S. Atty., Stephen M. Horn, Asst. U.S. Atty., Charleston, WV, for defendants.

## ORDER

HALLANAN, District Judge.

This matter is before the Court via "Plaintiffs Productions to the Magistrate's Findings and Recommendation." The Court assumes that the above-entitled document is intended to represent the plaintiffs' objections to the United States Magistrate Judge's Findings and Recommendation in the above-styled matter.

Pending before the Court is the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, Alternatively, for Summary Judgment.

By general Order entered November 12, 1992 and filed herein on November 10, 1994, this case was referred to the Honorable Mary S. Feinberg, United States Magistrate Judge, who was designated to hear the pleadings and evidence herein and to submit to this Court her proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. Section 636(b)(1)(B).

The Magistrate Judge recommends that the defendants' Motion to Dismiss be granted. Although the plaintiffs' objections were not timely filed and were not filed with this Court in Beckley but were filed in Charleston in contravention of Local Rule of General Practice and Procedure 7.03, the Court will consider the plaintiffs' objections. Thus, this Court must conduct a *de novo* review of those portions to which objections were made.

The plaintiffs object generally[1] to the Magistrate Judge's conclusion that the Na-

1. At the conclusion of the Magistrate Judge's Findings and Recommendation, the parties are provided with notice that they have 13 days from the date of filing within which to file
    *specific* written objections, *identifying the portions of the Findings and Recommendation to which objections is made,* and the basis of such objections. (emphasis added).
    In this matter, plaintiffs filed "Plaintiffs Productions to the Magistrate's Findings and Recommendation" (Objections). Although so-entitled, this document does not identify any portions of the Findings and Recommendation to which the plaintiff objects and, therefore, fails to make a specific objection or state a basis for any objection.
    After a review of the Objections it appears that plaintiffs disagree generally with the Magistrate Judge's conclusion that the discretionary function exception applies to this matter. The plaintiffs go on to misrepresent the policy concerns cited by the defendants in their discretionary function analysis as being solely aesthetic concerns. The plaintiffs then conclude, without support, that aesthetic concerns do not rise to the level of policy concerns contemplated by the discretionary function exception.

    With respect to the latter argument in which the plaintiffs' misrepresent the defendants' policy concerns as being purely aesthetic, the Court will briefly comment that the full range of policy concerns, "including manpower limitations, budgetary constraints and aesthetic, safety and environmental considerations" (Defendants' Motion to Dismiss, p. 11), cited by the defendants for their decision not to post a warning sign at Dunloup Creek are precisely the kind of concerns that are contemplated by the discretionary function exception. *See Cope v. Scott,* 45 F.3d 445, 450 (D.C.Cir.1995) ("determining the appropriate course of action would require the balancing of factors such as [the site's] overall purpose, the allocation of funds among significant project demands, the safety of ... visitors, and the inconvenience ... as compared to the risk of safety hazards"). Furthermore, the proper inquiry is not *what* policy concerns were offered by the National Park Service but "whether the type of decision being challenged is grounded in social,

tional Park Service's decision not to erect a sign along Dunloup Creek warning visitors of the dangerous fecal coliform count in the creek falls within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity. 28 U.S.C. § 2680(a).

■ After conducting a thorough *de novo* review of the record in this case, as well as all relevant cases, the Court adopts the Magistrate Judge's Findings and Recommendation in full. The National Park Service's decision not to post a warning sign at Dunloup Creek was a discretionary function of the United States according to the test set out in *United States v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991). First, the decision not to place a warning sign was an act or omission involving a judgment or choice on the part of the National Park Service. Secondly, the decision was based upon considerations of public policy, namely manpower, aesthetic, safety and environmental impact concerns and available financial resources. *Williams v. United States*, 50 F.3d 299 (4th Cir.1995).

Because this decision falls within the discretionary function exception the Federal Tort Claims Act's waiver of sovereign immunity, this Court lacks subject matter jurisdiction to hear this claim. Accordingly, the defendants' Motion to Dismiss is hereby **GRANTED.**

All matters herein being concluded, it is hereby **ORDERED** that this action be **DISMISSED** and retired from the Court's docket. The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

economic or political policy." *Id.* at 449 (citing *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991). Therefore, the plaintiffs' misrepresentation of the defendants' policy concerns is not only erroneous but is a misguided attempt to defeat the discretionary function exception on the merits of the defendants' policy decisions.

The plaintiffs remaining so-called general "objection" is the identical argument raised by the plaintiffs at oral argument, in their untimely Memorandum Against Defendants' Motion to

## FINDINGS AND RECOMMENDATION

FEINBERG, United States Magistrate Judge.

By Order entered November 10, 1994, the District Court referred dispositive motions under Rule 12 of the Federal Rules of Civil Procedure to the United States Magistrate Judge for submission of findings and recommendation. Pending before the court is defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and, Alternatively, for Summary Judgment and supporting memorandum filed on February 15, 1995, the plaintiffs' Memorandum Against Defendants Motion to Dismiss filed March 20, 1995, the United States Reply to Plaintiffs' Memorandum Against Defendant's Motion to Dismiss filed March 23, 1995 and Plaintiff's Reply to Defendant's Response filed March 30, 1995. Oral argument in this matter was held on March 20, 1995.

Plaintiffs filed a claim for damages under the Federal Tort Claims Act (FTCA) on August 29, 1994. Plaintiffs allege that on September 1, 1991, the decedent, Patricia G. Roop, "fell from the bank near Styrofoam Falls on Dunloup Creek into the New River Gorge National River...." Compl. ¶ 4. The decedent "was hospitalized for serious head and extensive bodily injuries sustained from the fall. After Patricia G. Roop was no longer in danger from head injuries the toxins from the river caused Patricia G. Roop to develop a bacterial infection in her lungs...." Compl. ¶ 6. Decedent died on September 19, 1991

of a bacterial infection of the lungs proximately caused by the Defendants [sic] negligence in failing to maintain the upkeep of the New River Gorge. The above described incident was proximately caused by the intentional, reckless and negligent acts

Dismiss and in "Plaintiff's Reply to Defendant's Response."

Thus, apparently the plaintiffs object generally to the Magistrate Judge's Findings and Recommendation to this Court. While the Court will review Plaintiff's general "objection," the Court notes that "objections" of this general sort in which the plaintiffs re-argue their entire response to the defendants' Motion to Dismiss were not what was intended by "specific, written objections" in Rule 72(b) of the Federal Rules of Civil Procedure.

of the defendants, in that they knew the dangerous toxic condition of the River, negligently failed to warn others of the non-apparent danger, recklessly allowed people to use the waterway without giving warning of the hazardous toxins contaminating the river, and negligently failed to correct the danger with due diligence.

Compl. ¶ 7–8. At oral argument, plaintiffs conceded that the defendant had no duty to clean up the fecal coliform bacteria in Dunloup Creek and instead, only had a duty to warn decedent of the presence of fecal coliform bacteria in Dunloup Creek.

The government has moved to dismiss, contending that the court lacks subject matter jurisdiction because the alleged negligence falls within the discretionary function exception to the FTCA, and therefore, the action is barred by sovereign immunity. (Def.'s Mtn. to Dism. at 1.)

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the court must view the allegations in the complaint in the light most favorable to the plaintiff, and must take them as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). When faced with such a motion, "the magistrate judge should ... limit [her]self to a consideration of whether plaintiff's allegations, standing alone and taken as true, pleaded jurisdiction and a meritorious cause of action." *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1473 (4th Cir.1991).

The FTCA, 28 U.S.C.A. § 1346(b) (1994), provides a limited waiver of sovereign immunity in suits against the United States for damages due to

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The FTCA includes several specific exceptions to this waiver of sovereign immunity that, if applicable, preclude government liability.

The exception at issue in the instant case, known as the discretionary function exception, provides that the government is immune from suit

based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a) (1994). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). In creating this exception to the FTCA,

Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the Government from liability that would seriously handicap efficient government operations.'

*Id.* at 814, 104 S.Ct. at 2765 (quoting *United States v. Muniz,* 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963)).

While Congress' reasons for enacting the discretionary function exception are clear, the statute itself does not specifically define those governmental functions that are deemed to be discretionary and thus, protected by the exception. Two recent Supreme Court decisions clarified the exact test to be used in determining whether a governmental function is discretionary. In *Berkovitz v.*

*United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), "the Court settled upon and then clarified a two-tier analysis for identifying discretionary functions." *Baum v. United States,* 986 F.2d 716, 720 (4th Cir.1993). The first prong of the *Berkovitz/Gaubert* test asks whether the governmental action

> involves an element of judgment or choice. [citations omitted] The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action. If such a mandatory statute, regulation, or policy applies, then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary.

*Id.*

If the government conduct involves a matter of judgment or choice, the second tier of the *Berkovitz–Gaubert* analysis asks whether the judgment or choice is "based on considerations of public policy." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959, *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. In particular, the court must look to the nature of the judgment or choice "in an objective, or general sense" to determine if it is "grounded in the social, economic, or political goals of the statute and regulations." *Baum,* 986 F.2d at 721, *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1274.

Turning to the first step of the *Berkovitz–Gaubert* analysis, the court finds that there are no mandatory federal statutes, regulations, or policies requiring a precise course of action to be taken by the National Park Service with respect to warning park visitors of the danger of fecal coliform bacteria in the New River and its tributaries. The plaintiffs asserted at oral argument that there is a mandatory state common law duty imposed on the government to warn park visitors of the hidden danger of fecal coliform bacteria in Dunloup Creek. The court finds that, whether or not West Virginia common law imposes such a duty, the Court in *Berkovitz* made clear that the discretionary function

exception involves federal statutes, regulations or policies. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. The court has not located, nor have the plaintiffs identified, a mandatory federal statute, regulation or policy requiring the installation of such warning signs.

Instead, the court finds that the only relevant federal policy, located in the NPS Sign Manual, refers to the "long standing NPS policy to minimally intrude upon the natural or historic setting in National Park System areas, and to avoid an unnecessary proliferation of signs, while striving to ensure for the safety of park visitors." (Govt.'s Exh. 8 at 1–1.) *See Kiehn v. United States,* 984 F.2d 1100, 1103 (10th Cir.1993) (identical NPS policy found to be discretionary).

Furthermore, the NPS Sign Manual reveals that decisions about the use of signs are to be made at the discretion of the park manager. The NPS Sign Manual states that the park manager has the

> responsibility for determining whether or not a sign is necessary or appropriate at a given location. The decision to utilize a particular sign at a particular location requires the professional judgment of the park manager—drawing upon available guides, resources, and traffic safety engineering expertise—and considering a variety of other factors, such as the appearance of the road as a whole and its relationship to the natural and/or historical environment through which it passes.

(Govt.'s Exh. 8 at 1–1.)

Plaintiffs argue that the instant case is analogous to *George v. United States,* 735 F.Supp. 1524 (M.D.Ala.1990). In *George,* a swimmer filed suit under the FTCA after being attacked by an alligator in the Open Pond Recreation Area of the Conecuh National Forest. The Forest Service officials had knowledge of the alligator's presence in the Open Pond Area, but argued that the decision not to post warning signs was discretionary. *Id.* at 1525, 1528. The court held that while the decision to create recreational areas was discretionary, "once the decision was made, the Forest Service was under a duty to act reasonably for protection of humans, particularly against hidden dan-

gers known to the Service." *Id.* at 1533. The court further stated that

> [s]ince the danger presented by the reptile(s) was known by the forest officials, there was no discretion to fail to take any remedial measures. Surely, it cannot be contended that the forest officials had discretion to decide whether overriding policy considerations of protecting alligator(s) and the natural state of the area outweighed the safety of humans using the designated swimming area.

*Id.* at 1533.

This court rejects the decision in *George* because it improperly entangled issues of negligence with the determination of whether the discretionary function exception applied. As the Eleventh Circuit later stated in *Autery v. United States*, 992 F.2d 1523, 1529 n. 11 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1829, 128 L.E.2d 458 (1994), "negligence is irrelevant to the mandatory-policy inquiry." Like the court in *George,* the district court in *Autery* determined that the discretionary function exception did not apply where park personnel had knowledge of a dangerous tree condition, yet took no action to reduce this danger. On appeal, the Eleventh Circuit noted that "the district court erroneously concluded that its findings with respect to the government's alleged negligence were relevant to determining whether the government's conduct falls within the scope of the discretionary function exception of the FTCA." *Id.* at 1525 n. 5. The Court of Appeals stated further that

> [t]he district court's analysis appears to collapse the question of whether the Park Service was negligent into the discretionary function inquiry. That is, after finding that the Park Service had knowledge of the danger of black locust trees, the district court imposed a 'reasonableness' requirement on the government's conduct. It is the governing administrative policy, not the Park Service's knowledge of danger, however, that determines whether certain conduct is mandatory for purposes of the discretionary function exception. The FTCA expressly provides that the exception 'applies to policy judgments, even

to those constituting abuse of discretion.' [citations omitted]

*Id.* at 1528. Thus, the plaintiffs' unconditional assertion that if "the Government, as landowner, or in this case maintainer, fails to warn of a hidden dangerous condition, of which it is aware, the discretionary function exception will not bar an action against it" (Pl.'s Memo. at 10) is incorrect. The court in *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir.1991) rejected this very assertion when it noted that two previous Tenth Circuit cases did not stand for the proposition that all failure to warn cases automatically fall outside the scope of the discretionary function exception. Instead, the proper inquiry is whether the government's alleged breach of a duty to warn is based on a mandatory federal statute, policy or regulation directing a specific course of action or whether a discretionary choice or judgment is grounded in policy considerations.

Based on the above, the court concludes that no statute, regulation or policy exists that "specifically prescribes a course of action for an employee to follow." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. Furthermore, the NPS Sign Manual is discretionary in nature because it does not explicitly require the posting of signs in certain situations, nor does it designate the exact locations or the manner to be used in determining the location of the signs. Instead, the NPS policy regarding the posting of signs involves an "element of judgment or choice" to ·be exercised by the park manager. (Govt.'s Exh. 8 at 1–1.) Furthermore, the issue of the defendant's negligence is not relevant to a proper discretionary function exception analysis. Thus, under the first prong of the *Berkovitz–Gaubert* test, the government's actions were discretionary, as they were not governed by any federal statute, regulation or policy that directed a specific course of action.

The next question under the *Berkovitz–Gaubert* analysis is whether the discretionary decision by the NPS not to place warning signs along Dunloup Creek was based on considerations of public policy. Mr. Kennedy, superintendent of the New River Gorge National River, indicated in his declaration

that in deciding not to post warning signs, he weighed several policy factors including manpower limitations, safety concerns, budgetary constraints and aesthetic and environmental considerations. (Govt.'s Exh. A at 13.) Mr. Kennedy expressed his concern that visitors may not see the signs if they were placed too far apart. On the other hand, he was concerned that "if too many signs are placed along these tributary banks, then the natural beauty of the stream is degraded with what is, in essence, sign pollution." (Govt.'s Exh. A at 13.) Furthermore, the cost of producing, placing and maintaining the signs factored into Mr. Kennedy's decision. As Mr. Kennedy points out, "several of these tributaries which flow through the New River Gorge National River are several miles in length." (Govt.'s Exh. A at 13.) Thus, "the manpower and financial resources, environmental impact and aesthetics of placing warning signs in an area so large is one that must be balanced against the other needs of the New River Gorge National River in light of the Congressional mandate given to the National Park Service." (Govt.'s Rep. at 4.)

The court finds that the government's decision not to post warning signs was clearly "grounded in the social, economic, or political goals of the statute and regulations." *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274. The goal of the NPS sign policy was to avoid the proliferation of signs while assuring the safety of visitors to the New River Gorge National River. (Govt.'s Exh. 8, at 1–1.) In order to achieve this goal, the government weighed several policy factors including safety, economic and aesthetic concerns. The government's decision not to post signs cannot be divorced from the larger policy decision to avoid the proliferation of signs while protecting the safety of park visitors. *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991).

Plaintiffs argue that aesthetic and economic considerations are not decisions grounded in policy. Plaintiffs rely on the D.C. Circuit's recent decision in *Cope v. Scott*, 45 F.3d 445 (D.C.Cir.1995) and *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987). In *Cope*, the plaintiff alleged that the NPS failed to post adequate warning signs about the nature of a slippery road surface along a heavily traveled main roadway through an urban park in Washington, D.C. *Id.* at 446. The government asserted that the placement of signs involved policy judgments about engineering and aesthetic concerns. The court disagreed, stating that engineering judgment "is no more a matter of policy than were the 'objective scientific principles' that the *Berkovitz* court distinguished from exempt exercises of policy judgment." *Id.* at 452 (citing *Berkovitz*, 486 U.S. at 545, 108 S.Ct. at 1963). With respect to the aesthetic concerns, the court stated that "while we acknowledge the Park Service's desire to maintain the park in as pristine a state as possible, the government has failed to demonstrate how such a desire affects that placement of traffic signs on Beach Drive" in light of the fact that the half-mile area in question already had twenty three signs. *Id.*

Unlike *Cope*, in this case the government has provided legitimate aesthetic concerns that are grounded in a policy which calls for the avoidance of signs and safety of park visitors. The New River Gorge National River in not an urban park, nor are we concerned here with a half-mile stretch of frequently traveled road already heavily marked with signs. Instead, the New River Gorge National River is located in a remote and sparsely populated area covering approximately 62,000 acres along 52 miles of the New River. (Govt.'s Rep. at 4.) Furthermore, the court's rejection of economic considerations in *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987) was largely due to the fact that the government's decision not to repair the road erosion was not discretionary because mandatory policy existed which required the government to conform to specific regulatory standards. *Id.* at 195. Thus, the NPS's action in that case failed the first element of the *Berkovitz–Gaubert* analysis. The court concludes that the government's reasons for not posting warning signs in the area of Dunloup Creek were grounded in safety, economic and aesthetic policy concerns. As a result, these policy decisions are the type the discretionary function exception was designed to protect.

574

### Recommendation

This court concludes that it is without subject matter jurisdiction to hear this claim because the action is barred by the discretionary function exception to the FTCA. No mandatory federal statute, policy or regulation exists that specifically directs the actions of the government. Further, the government's decision not to post warning signs about the danger of fecal coliform bacteria within the New River Gorge National River is grounded in social, economic and political policy objectives. Therefore, it is respectfully RECOMMENDED that the District Court grant defendant's Motion to Dismiss.

The parties are notified that these Findings and Recommendation are hereby FILED, and a copy will be submitted to the Honorable Elizabeth V. Hallanan. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, the parties shall have thirteen (13) days from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour,* 889 F.2d 1363 (4th Cir.1989); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir.1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Hallanan, and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same, by certified mail, return receipt requested, to counsel of record.