Nell D. AUTERY, As Administratrix of the Estate of Roy Franklin Autery; Charlotte Schreiner, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 92–6427.

United States Court of Appeals, Eleventh Circuit.

June 11, 1993.

William R. Sawyer, Asst. U.S. Atty., Mobile, AL, Jennifer H. Zacks, Asst. U.S. Atty., Appellate Staff Civ. Div., Dept. of Justice, Washington, DC, for defendant-appellant.

Andrew T. Citrin, David G. Wirtes, Jr. and Joseph M. Brown, Jr., Cunningham, Bounds, Yance, Crowder & Brown, Mobile, AL, for plaintiffs-appellees.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and RONEY, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Roy Franklin Autery was killed and Charlotte Schreiner was injured when a black locust tree fell on their car as they drove through Great Smokey Mountain National Park. Nell Autery, as administratrix of her brother's estate, and Schreiner (together, "the plaintiffs") brought this negligence action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674 ("FTCA"). After a bench trial, the district court entered a judgment for the plaintiffs, holding that the United States had negligently failed to (1) devise, implement and follow an appropriate tree hazard management plan; (2) properly maintain the National Park area; (3) properly inspect the trees in the National Park in the area where the accident occurred; and (4) identify and remove the hazardous trees which fell and struck Autery and Schreiner.[1] The court awarded $500,000 in compensatory damages to Autery's estate and $20,000 to Schreiner for negligent infliction of emotional distress, 786 F.Supp. 944.

At issue in this case is whether the alleged negligent conduct by the United States falls within the ambit of the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a). Because we hold that it does, we REVERSE the judgment of the district court and DISMISS the case for lack of subject matter jurisdiction.[2]

## I.

The district court made findings of fact summarized as follows. Autery and Schreiner were driving on U.S. Highway 441 in Great Smokey Mountain National Park ("GSMNP") on July 5, 1989 when two locust trees fell into the roadway. GSMNP is owned and operated by the United States. Autery, who was driving, was killed instantly when one of the trees struck the car. Schreiner was injured. The tree in question was approximately 50 years old, approximately 70 feet in height and fell due to root rot. The accident occurred near the Oconaluftee Visitor's Center; a road sign in the area read, "35 Miles Per Hour, Congested Area." At the time of the accident, GSMNP did not have in force a written tree hazard management plan. In October 1976, the National Park Service ("Park Service" or "NPS") had issued Special Directive 76–9 (Health and Safety of Park Visitors) which stated in part:

---

1. The court dismissed plaintiffs' claim that the government had acted willfully and wantonly with respect to tree inspection and removal.

2. The government challenged the district court's judgment for plaintiffs on two grounds: (1) that the government's conduct at issue in this case was protected by the discretionary function exception; and (2) that under North Carolina law, the government did not owe a duty of reasonable care to the plaintiffs. Because the issue under the FTCA is one of federal court jurisdiction, we address it first. Holding that federal jurisdiction does not exist, we do not reach the merits of the challenge under North Carolina law.

Protection of the visitor, and park and concessioner employees, from violations of laws and regulations and from hazards inherent in the park environment, is a prime responsibility of the National Park Service. *The saving and safeguarding of human life takes precedence over all other park management activities,* whether the life is of the visitor, concessioner, or park employee. . . .

R. 2–64 at 11–12 (emphasis added by district court). Pursuant to this directive, the unwritten policy at GSMNP at the time of the accident was to

make every reasonable effort within the constraints of budget, manpower, and equipment available to detect, document, remove, and prevent tree hazards.

*Id.* at 12.[3]

In order to effectuate this policy, GSMNP personnel initially conducted visual inspections from trucks driven along the road. Any tree that appeared hazardous was then inspected more closely. "[I]t was the established practice at the park for all employees to identify and report known or potentially known hazardous trees to supervisors or maintenance personnel for appropriate action." *Id.* at 10–11.

The district court also found that prior to the accident, GSMNP personnel received information regarding the risks to black locust trees in high-density areas. Keith Langdon, Supervisory Natural Resource Specialist at GSMNP, received a letter in November 1988 from Dr. William Sites, a plant pathologist, which contained the following "critical safety information":

Black locust trees are short-lived and due to decay (following borer activity), break up and drop limbs and tops. Avoid them in new areas; *remove* them *when possible* in existing areas.

*Id.* at 12 (emphasis added by district court). Langdon circulated this letter to Tim Stubbs, the primary preparer of the written tree hazard management plan, and met with GSMNP rangers and maintenance personnel to discuss the potential dangers posed by black locust trees.[4]

Based on this evidence, the district court determined that park personnel "had or should have had . . . knowledge . . . of the black locust tree danger . . ., [and that no] actions were taken with regard to reducing the hazards identified with the black locust trees." *Id.* at 14. The court further concluded that this inaction—the failure of park personnel to implement a closer inspection of tree hazards—"was a failure by the defendant to use due care in the safeguarding of human life by the removal of black locust tree hazards." *Id.* at 15.[5]

## II.

### A.

The FTCA waives the sovereign immunity of the United States for claims brought against it

for injury or loss of property, or personal injury or death caused by the negligent or

---

**3.** The district court found that this policy was formalized in a written Tree Hazard Management Plan issued in June 1990, ten months after the date of the accident. The written policy stated in part that

[t]he areas of the park in which the NPS will inspect and remove tree hazards are any "urbanized" areas of sustained visitor or employee use.

R. 2–64 at 17. Based on plaintiffs' and defendant's witness testimony, the trial court determined that "because of the proximity of the accident to the Oconaluftee Visitor Center, the accident happened in a location prone to heavy, sustained use by visitors in the park." *Id.* at 18.

**4.** This information also was passed along to Dean Berg, Langdon's supervisor; Joe Abrell, Langdon's division chief; Louis Smith, head of

tree maintenance for the North Carolina side of the park; Frank Hyatt, facility manager responsible for maintenance on the North Carolina side of the park; Robert Hockman, facility manager responsible for maintenance on the Tennessee side of the park; Don Stevenson, a maintenance foreman on the Tennessee side of the park; James Patty, a maintenance worker on the Tennessee side of the park; and Buford Price, park personnel.

**5.** As discussed more fully in Part II.A.1., *infra,* the district court erroneously concluded that its findings with respect to the government's alleged negligence were relevant to determining whether the government's conduct falls within the scope of the discretionary function exception of the FTCA. We include these findings in this opinion to highlight the district court's reasoning.

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). Jurisdiction over FTCA claims is vested exclusively in the federal courts. *Id.* This waiver of immunity, however, is qualified by several exceptions. *See* 28 U.S.C. § 2680. At issue here is the "discretionary function" exception, which precludes government liability for

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v.*

*S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines )*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). Separation of powers principles further support Congress' decision to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765.

■ The Supreme Court recently has clarified the two-part test for determining whether the government's conduct falls within the scope of the discretionary function exception.[6] We must first determine whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.' " *Id.* at ——, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)).

" '[E]ven assuming the challenged conduct involves an element of judgment,' " however, we then must determine if the challenged

---

6. This court has not dealt explicitly with the question of whether the plaintiff or the government has the burden of proving the applicability of the discretionary function exception. All circuits to address the issue have concluded that "plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity," but "the burden of proving the [discretionary function] exception lies with the government." *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir.1992); *see also Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir.1952). "Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to prove the applicability of a specific provision of § 2680." *Carlyle,* 674 F.2d at 556, *quoted in Prescott,* 973 F.2d at 702 n. 4.

In *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court appeared to impose the burden on the tort plaintiff to show that the government's conduct is not protected under the discretionary function

exception. "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of a regulatory regime." *Id.* at —— – ——, 111 S.Ct. at 1274–75. The Ninth Circuit, in *Prescott,* held that *Gaubert* does not conflict with its ruling because *Gaubert* requires plaintiffs only to allege facts sufficient to state a claim under the FTCA, but does not deal specifically with the burden of proof issue. *Prescott,* 973 F.2d at 702 n. 4. The Tenth Circuit has questioned the approach taken in *Prescott,* but has not made a formal ruling on the issue. *Kiehn v. United States,* 984 F.2d 1100, 1105 n. 7 (10th Cir.1993).

These issues were not presented on appeal in this case. As this is an issue of first impression in this circuit, we decline to make an explicit holding without the benefit of briefing from the parties. Nevertheless, even under the more stringent *Prescott* approach, we hold that the government proved that the discretionary function exception applies to its conduct in this case.

actions are the kind of conduct " 'that the discretionary function exception was designed to shield.' " *Id.* (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958); *see also Phillips v. United States,* 956 F.2d 1071, 1075 (11th Cir.1992). The conduct must be "grounded in the policy of the regulatory regime." *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275. In *Gaubert,* the Court discussed the type of conduct that would be considered grounded in judgment or choice but not in developing or carrying out public policy.

> [If a governmental official] drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Id.* at —— n. 7, 111 S.Ct. at 1275 n. 7.

## B.

### 1.

■ Before we address whether the government's conduct violated a mandatory regulation or policy, we must determine exactly what conduct is at issue. The government argues that the conduct to be evaluated is "the Park Service's decision to establish and implement a tree inspection program. Gov't Br. at 9. Plaintiffs, on the other hand, contend that "the conduct at issue [is] the park's failure to carry out the mandates of its then existing policy of identifying and eliminating known hazardous trees." Pls. Br. at 24–25. Plaintiffs apparently concede that the discretionary function exception applies "to the park's decision to adopt a ... tree hazard plan," but argue that "[t]he doctrine does not

apply to the manner in which the park's employees carried out the plan." *Id.* at 27. The district court, in adopting the report and recommendations of the federal magistrate, held that "the inquiry ... is whether the Park Service officials had discretion under their Tree Hazard Management Plan to remove 'hazardous' trees." R. 2–64 at 26.

The government's focus on the decision to establish a tree inspection plan is too broad; as plaintiffs concede, the government had the discretion to adopt or not adopt a plan at all. The more important question is whether any statute, regulation or agency guideline specifically provided that *if* a tree inspection plan were developed, it would have to include particular inspection procedures.[7]

Plaintiffs' and the district court's focus, on the other hand, is too narrow. The particular inquiries posed by plaintiffs and the district court are based on misinterpretations of the law. Plaintiffs' support their contention that the discretionary function exception does not apply to the manner in which park personnel administered the inspection plan by relying on Fifth Circuit cases that had held that the government was not protected when "it was performing an operational function." *Denham v. United States,* 834 F.2d 518, 521 (5th Cir.1987); *see also Wysinger v. United States,* 784 F.2d 1252, 1253 (5th Cir. 1986); *Butler v. United States,* 726 F.2d 1057, 1062–63 (5th Cir.1984). The Supreme Court squarely rejected this proposed distinction in *Gaubert,* ruling that the Fifth Circuit "erred in holding that the [discretionary function] exception does not reach decisions made at the operational or management level." *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275.[8] "Discretionary conduct is not confined to the policy or planning level." *Id.; see also Varig Airlines,* 467 U.S. at 813, 104

---

7. This distinction is important. As the Supreme Court has said many times—in a different context—the nature of the federal regulatory regime is generally permissive but those who choose to participate must abide by the rules and regulations mandated by Congress. Thus, those who seek federal financial assistance, whether it be states, non-profit organizations or individuals, have a choice whether to participate in a federal program. But once that decision to participate is made, the grant recipient is bound by any mandatory rules imposed by federal law. *See, e.g., South Dakota v. Dole,* 483 U.S. 203, 206–07,

107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987) (holding that federal statute conditioning receipt of highway funds on adoption of minimum drinking age is valid use of Congress' spending power) (and cases cited therein).

8. The Court went on to say that the court of appeals had misinterpreted previous cases as "perpetuating a nonexistent dichotomy between discretionary functions and operational activities." *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275.

S.Ct. at 2764 ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.").

The district court's inquiry, on the other hand, by asking whether the park officials had discretion to remove "hazardous" trees, begs the question. The tree inspection program was designed to identify which trees were hazardous. Whether park personnel had discretion in executing that plan is the relevant issue. The district court's analysis appears to collapse the question of whether the Park Service was negligent into the discretionary function inquiry. That is, after finding that the Park Service had knowledge of the danger of black locust trees, the district court imposed a "reasonableness" requirement on the government's conduct.[9]

It is the governing administrative policy, not the Park Service's knowledge of danger, however, that determines whether certain conduct is mandatory for purposes of the discretionary function exception. The FTCA expressly provides that the exception "applies to policy judgments, even to those constituting abuse of discretion." *Dickerson, Inc. v. United States*, 875 F.2d 1577, 1581 (11th Cir.1989); *see also Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953) ("The exercise of discretion could not be abused without negligence or a wrongful act."); *Layton v. United States*, 984 F.2d 1496, 1502 (8th Cir.1993) ("Whether ... employees were negligent in making any ... decisions is irrelevant."); *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir.1989) ("[N]egligence is simply irrelevant to the discretionary function inquiry."); *Reeves v. United States Dept. of Treasury*, 809 F.Supp. 92, 94 (N.D.Ga. 1992) (same).

Therefore, the relevant inquiry here is whether controlling statutes, regulations and administrative policies mandated that the Park Service inspect for hazardous trees in a specific manner. If not, then the Park officials' decision to employ a particular inspection procedure—and its execution of that plan—is protected by the discretionary function exception.

## 2.

Title 16 of the United States Code, section 1 creates the National Park Service and places it under the charge of a director appointed by the Secretary of the Interior. The statute gives the Secretary broad authority to "promote and regulate" the national parks, so as "to conserve the scenery and the natural and historic objects and the wild life ... and to provide for the enjoyment of the same." 16 U.S.C. § 1. Section 3 authorizes the Secretary to provide "in his discretion for the destruction ... of ... plant life as may be detrimental to the use of [the national] parks." 16 U.S.C. § 3. Pursuant to these statutory grants of authority, the Park Service, under the direction of the Secretary, had discretion to design and implement a policy for evaluating and removing trees from GSMNP. *See Zumwalt v. United States*, 928 F.2d 951, 954–55 (10th Cir.1991) (finding discretion when Park Service policy provided only general guidelines for how to determine hazardous sections of trails). The remaining issue in this inquiry, therefore, is whether some other Park Service policy or directive removed that discretion by mandating a method of tree management different than the one the Park Service chose to adopt.

As the district court found, Special Directive 76–9 formed the basis of the unwritten tree inspection plan in effect at the time of the accident. The Directive, written in broad language, provided that the "saving and safeguarding of human life takes precedence over all other park management activities." R. 2–64 at 11 (emphasis of district court omitted). The Directive does not mention tree inspections, nor how the agency should implement the goal of safety or balance it against other considerations. The unwritten policy required only that employees "make every effort within the constraints of budget, manpower, and equipment available to recognize and report" hazardous trees. *Id.* Although the policy apparently

---

9. The court wrote that once park officials received the information regarding black locusts, "no reasonable range of choices existed with respect to the Park Service['s] inaction." R. 2–64 at 30.

singled out for special attention "urbanized" areas like the one where the accident occurred, the policy prescribed neither a particular method of inspection nor special rules for inspecting black locust trees.

Such a general guideline is insufficient to deprive the federal government of the protection of the discretionary function exception. Only if a "*federal statute, regulation, or policy specifically prescribes a course of action,*" *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958, embodying a " '*fixed or readily ascertainable standard,*' " will a government employee's conduct not fall within the discretionary function exception. *Alabama Elec. Co-op. v. United States,* 769 F.2d 1523, 1529 (11th Cir.1985) (quoting *Miller v. United States,* 710 F.2d 656, 663 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983) (emphasis in *Miller*)) (other citations omitted).

> The district court erred when it concluded: [I]t cannot be contended that the park officials had discretion to decide whether overriding policy considerations of protecting the trees and the natural state of the area outweighed the safety of humans using the park roadway.

R. 2–64 at 30. Neither federal statutes nor Park Service policy, as embodied in the Special Directive, require safety at any cost. To be sure, the Directive specifies that safety is the most important consideration. Nevertheless, the statutes and Park Service policy ultimately involve striking a balance between providing for safety and fulfilling the Park Service's charge to protect the natural environment, while taking personnel and budgetary limitations into account. Based on these competing considerations, officials at GSMNP chose to implement a plan of having park rangers and maintenance personnel first inspect trees from the roadway, and

then, if in their *judgment,* the trees evidenced sufficient decay to demand a closer inspection, to take appropriate action.[10]

Plaintiffs cite this court's recent decision in *Phillips,* 956 F.2d 1071, to support their argument that once the tree inspection procedure was implemented, performance of it became mandatory. In *Phillips,* an employee for an independent contractor was injured when he fell from scaffolding at a construction site at Robins Air Force Base in Georgia. Insuring the safety of the scaffolding was the responsibility of the resident engineer, the quality assurance representative and the chief of quality assurance, all of whom were Army Corps employees. An accident prevention plan and a safety manual, both written by the Army Corps, prescribed specific safety procedures these three employees were to carry out every day. The court, in holding for the plaintiff, reasoned that "the government cannot expect Army Corps inspectors to make policy judgments concerning whether or not they should abide by the directives in the Corps's Safety Manual every day they go to work." *Id.* at 1075.

Whether a policy establishes a mandatory requirement so as to deprive government employees of discretion depends on the terms of the particular policy at issue. *See, e.g., Industria Panificadora v. United States,* 957 F.2d 886, 887 (D.C.Cir.) (provision requiring government to "take all measures" to "restore, and ensure . . . public order and safety" does not prescribe a specific course of action), *cert. denied,* —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992). Here, the inspection plan in effect at the time of the accident did not compel park employees to inspect certain trees on certain days or remove a particular number of trees per week.[11]

---

**10.** This is similar to *Zumwalt,* where the court held that under National Park Service policies, park personnel retained discretion to implement a plan to make hiking trails more safe for visitors. The court wrote:

> To implement the Project Statement, Park Service personnel must first determine which sections of the Trail have proven to be hazardous or difficult to follow. The Project Statement does not provide any direction on how this determination should be made. Once a haz-

ardous section is identified, Park Service personnel must determine what type of improvements should be located based on wilderness policy and the need for public safety. Further, the Project Statement contains no time frame for implementing the recommended action. These factors demonstrate the need for individual judgment by Park Service employees.
> *Zumwalt,* 928 F.2d at 954.

**11.** The fact that park officials had information regarding the potential danger of black locust

Finally, there was no evidence presented in the district court that park personnel did not fully comply with the tree inspection procedure. "Government liability cannot logically be predicated on the failure of [employees] to go beyond what the operational plans ... required them to do." *Allen v. United States*, 816 F.2d 1417, 1421 (10th Cir.1987), cert. denied, 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988).

### C.

Having decided that no mandatory statute, regulation or policy controlled the development and implementation of GSMNP's unwritten tree inspection plan, we now address whether the choices involved in such a development and implementation are grounded in social, economic and public policy. Generally, courts have held that decisions about what safety measures to employ in national parks and how to execute them involve balancing the same considerations that inform all policy decisions regarding the management of national parks: safety, aesthetics, environmental impact, and available financial resources. *See, e.g., Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir.1993) (holding that decisions about whether and where to post warning signs in remote areas of park involve balancing "resource allocation, visitor safety and scenic preservation"); *Johnson v. United States*, 949 F.2d 332, 338 (10th Cir.1991); *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir.1987); *see also* 16 U.S.C. §§ 1, 3. As the *Zumwalt* court held, when the Park Service balances safety considerations against the interest in preserving the natural environment, that decision is grounded in policy. 928 F.2d at 955.

Not all decisions regarding safety management have been found to be grounded in social, economic and political policies. In *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987), the court held that the discretionary function exception did not apply to the Park Service's failure to perform ordinary maintenance to keep a road in safe condition. The mere fact that Park Service personnel were required to work within a budget was irrelevant, the court said, because "[b]udgetary constraints underlie virtually all governmental activity." *Id.* at 196. Implicit in the court's reasoning in *ARA Leisure*, however, was that the decision not to repair the road erosion was not discretionary because there was "evidence in the record that Park Service standards explicitly required that park roads 'conform to the original grades and alignments' and that graded roads be 'firm, [and] of uniform cross section.'" *Id.* at 195 (quoting Park Service policy). "Thus, the Park Service's actions in that case failed the first element of the *Berkovitz–Gaubert* analysis: there existed mandatory regulations compelling the Park Service to act, and those regulations were not met." *Baum v. United States*, 986 F.2d 716, 724 (4th Cir.1993) (discussing *ARA Leisure*).[12]

In *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990), decided after *Berkovitz*, the court affirmed the reasoning in *ARA Leisure* and declined to apply the discretionary function exception to the Park Service's failure to warn of the potential danger of stepping on hot coals. In so doing, the court also relied on its previous decision in *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018 (9th Cir.1989), in which it held that FTCA liability attached to the government's conduct "because there was no evidence of policy judgment in the government's negligent failure to remove certain unsuitable materials during construction of the canal." *Summers*, 905 F.2d at 1216 (discussing *Kennewick*). *Gaubert*, however, cautions against conducting "a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function," urging courts instead to "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one we would expect

---

trees did not remove their discretion to plan and implement the tree inspection plan. To be sure, the Park Service's awareness that the black locust trees were especially likely to decay is relevant to whether it was negligent in failing to discover and remove the tree that caused the accident. But negligence is irrelevant to the mandatory-policy inquiry.

**12.** *ARA Leisure* was decided before the Supreme Court ruled in *Berkovitz*.

inherently to be grounded in considerations of policy." *Baum,* 986 F.2d at 720–21.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion.... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* —— U.S. at ——, 111 S.Ct. at 1274–75 (emphasis added); *see also In re Joint Eastern & Southern Districts Asbestos Litigation,* 891 F.2d 31, 37 (2d Cir.1989) ("[I]t is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision."); *United States Fidelity & Guar. Co. v. United States,* 837 F.2d 116, 120–21 (3d Cir.), *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988).[13]

To decide on a method of inspecting potentially hazardous trees, and in carrying out the plan, the Park Service likely had to determine and weigh the risk of harm from trees in various locations, the need for other safety programs, the extent to which the natural state of the forest should be preserved, and the limited financial and human resources available. Indeed, the district court recognized this when it criticized the Park Service for elevating "the overriding policy considerations of protecting the trees and the natural state of the area" over "the safety of humans using the park roadway." R. 2–64 at 30. Although the district court may have disagreed with the balance struck by the Park Service, or believed that some other policy would have been better, the discretionary function exception is designed to protect against just this type of "judicial 'second-guessing.'" *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765; *see also Bowman,* 820 F.2d at 1395.

### III.

For the foregoing reasons, we hold that the decisions made by GSMNP personnel in designing and implementing its unwritten tree inspection program fall within the ambit of the discretionary function exception. Thus, both this court and the district court lack jurisdiction over plaintiffs' claim. Accordingly, we REVERSE the decision of the district court, VACATE the judgment and DISMISS the case for lack of subject matter jurisdiction.

---

**13.** The district court's ruling suggests that it conducted a subjective, fact-based inquiry as to whether the decisions involved balancing social, economic or political concerns. The court wrote

that "there is no indication" that the government's actions were in fact [a]ffected by "constraints of personpower and budget." R. 2–64 at 14.