**Gladys WRIGHT and husband, Henry L. Wright, and Christine Acuff, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 3:93–cv–695.

United States District Court,
E.D. Tennessee,
Northern Division.

Nov. 23, 1994.

James L. Milligan, Jr., Knoxville, TN, for plaintiff.

Guy W. Blackwell, Dept. of Justice, U.S. Attorney's Office, Greeneville, TN, Paul F. Figley, Steven B. Snyder, Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

Plaintiffs Gladys Wright and Christine Acuff bring this negligence action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674 ("FTCA"), for injuries they allegedly sustained while hiking in the Nantahala National Forest in

Graham County, North Carolina, on the morning of April 11, 1991.[1] Specifically, these plaintiffs allege that while walking with their hiking club on the Slickrock Creek Trail in the Nantahala National Forest, a "huge rotten tree" fell on them [see Doc. 1, p. 2]. Ms. Wright alleges that she was rendered unconscious and received severe injuries to her left leg, which eventually resulted in an above-the-knee amputation. Ms. Acuff alleges that she was also rendered unconscious and received severe injuries to both legs, as well as broken ribs, cuts and lacerations.

In their original complaint, plaintiffs allege that the United States was negligent in: (1) failing to properly inspect the trail; (2) failing to remove the tree which fell on them; (3) failing to warn plaintiffs of the danger of falling trees; and (4) allowing plaintiffs to hike on the trail. In their amended complaint, plaintiffs also allege willful and wanton conduct on the part of the defendant, as well as violations of defendant's Land and Resource Management Plan.[2] This matter is presently before the court on defendant's motion for dismissal [Doc. 8] and renewed motion for dismissal [Doc. 17].[3] In its motions, defendant contends that this action should be dismissed for the following reasons: (1) the discretionary function exception to the FTCA prohibits judicial review of United States' policies and decisions regarding wilderness management; (2) the North Carolina Trails and Hikers Act bars the action; and (3) the United States did not owe plaintiffs a duty under North Carolina law. The issues raised have been thoroughly briefed by the parties [see Docs. 9, 12, 20, 22, and 23]. Because matters outside the pleadings have been considered by the court, defendant's motions to dismiss will be treated as ones for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. See Rule 12(b), Federal Rules of Civil Procedure. For the reasons that follow, the court will dismiss this action for lack of subject matter jurisdiction.[4]

## I.

It is well established that the United States as sovereign is immune from suit except to the extent it consents to be sued. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Absent a "clear relinquishment" of that immunity, a court has no jurisdiction over tort actions against the United States. *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). One of the limited waivers of sovereign immunity is the FTCA, which provides a remedy against the United States for the torts of its officers and employees. *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The FTCA waives the sovereign immunity of the United States for claims brought against it

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

28 U.S.C. § 1346(b).

The broad waiver of sovereign immunity contained in the FTCA is subject to enumerated exceptions provided therein. See *Kurinsky v. United States,* 33 F.3d 594, 596 (6th Cir.1994). The terms and conditions of a waiver of sovereign immunity establish and limit a court's jurisdiction to entertain a suit against the United States. *Sherwood,* 312 U.S. at 586–87, 61 S.Ct. at 769–70. Likewise, the terms and conditions of the FTCA must be strictly construed in favor of the sovereign. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1986). At issue here is the "discretionary

1. Apparently, plaintiff Henry L. Wright, the husband of Gladys Wright, was not hiking with his wife at the time of the accident. Mr. Wright seeks damages only for the loss and diminution of the services and consortium of his wife.

2. Plaintiffs' motion to amend the complaint [Doc. 13] was granted by order [Doc. 18] filed on April 18, 1994.

3. Defendant filed a "renewed" motion for dismissal in view of plaintiffs' amended complaint [see Doc. 19].

4. Because the court finds that federal jurisdiction does not exist, the court need not reach the merits of the challenge under North Carolina law.

function" exception, which precludes governmental liability for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). Separation of powers principles further support Congress' decision to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765. Thus, if the United States' alleged negligence arose from protected discretionary conduct, then this court lacks subject matter jurisdiction over plaintiffs' claims.[5]

▪ The Supreme Court has recently clarified the two-part test to determine whether the government's conduct falls within the scope of the discretionary function exception. First, it must be determined whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. *See United States v.*

*Gaubert,* 499 U.S. 315, 322–24, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)).

Second, assuming that a mandatory regulation does not govern conduct, "a court must determine" whether that judgment is of the kind " 'that the discretionary function exception was designed to shield.' " *Id.* (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958). In enacting § 2680(a), "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765. Thus, "[w]here there is room for policy judgment and decision there is discretion" of the sort protected by § 2680(a). *Dalehite,* 346 U.S. at 36, 73 S.Ct. at 968. In this regard, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.

▪ It must also be emphasized that if the challenged conduct is of the nature and quality that Congress intended to protect, then § 2680(a) applies even if there is negligence. "Congress exercised care to protect the government from claims, however negligently caused, that affected the governmental func-

---

5. In the Sixth Circuit, it has been held that the burden of proof falls on the government to prove the discretionary function exception. *See Carlyle v. United States, Department of the Army,* 674 F.2d 554, 556 (6th Cir.1982) ("Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to prove the applicability of a specific provision of § 2680."). However, in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court appeared to impose the burden on the tort plaintiff to show that the government's conduct is not

protected under the discretionary function exception: "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of a regulatory regime." 499 U.S. at 324–25, 111 S.Ct. at 1274–75. It will not be necessary to determine whether plaintiff or the government has the burden of proof because, even under the more stringent *Carlyle* approach, the court finds that the government proved that the discretionary function exception applies to its conduct in this case.

tions." *Dalehite,* 346 U.S. at 32, 73 S.Ct. at 966. The exception applies even if the government's acts or omissions constituted negligence under state law, since it is operative " 'whether or not the discretion involved be abused.' " *Id.* at 33, 73 S.Ct. at 966.

It is well settled that the means by which the executive branch implements a policy or project is a protected discretionary function that is not subject to judicial review in the context of tort litigation. *See, e.g., Dalehite,* 346 U.S. 15, 73 S.Ct. 956.[6] The means chosen by the United States to implement policy are protected discretionary decisions. As the Supreme Court stated in *Dalehite:*

> It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act include more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operation.

*Id.* at 35–36, 73 S.Ct. at 968.

In support of its position that the manner in which the United States maintains forest lands is protected by the discretionary function exception, the government relies heavily on *Autery v. United States,* 992 F.2d 1523 (11th Cir.1993). In *Autery,* the Eleventh Circuit held that plaintiffs' claims for injuries and wrongful death sustained when a tree fell on their car as they were driving through the Great Smoky Mountains National Park on U.S. Highway 441 in North Carolina were barred by the discretionary function exception to the FTCA. After a bench trial, the district court entered a judgment for plaintiffs holding that the United States had negligently failed to: (1) devise, implement and follow an appropriate tree hazard management plan; (2) properly maintain the National Park area; (3) properly inspect the trees in the National Park in the area where the

accident occurred; and (4) identify and remove the hazardous trees which fell and struck plaintiffs. *Id.* at 1524. Like plaintiffs in the instant case, the *Autery* plaintiffs alleged that the fallen tree suffered from "root rot." *Id.; see. also* Doc. 19, ¶ VII.

The *Autery* court determined that the relevant inquiry was whether there were any statutes, regulations, or administrative policies which mandated that the Park Service inspect for hazardous trees in a specific manner. *Id.* at 1528. The court determined that there were no such regulations. *Id.* at 1530. Rather, the court concluded that the choices involved in deciding on a method for inspecting potentially hazardous trees involved balancing a variety of safety, aesthetic, environmental, and financial concerns, including "the extent to which a natural state of the forest should be preserved, and the limited financial and human resources available." *Id.* at 1530–31. The Eleventh Circuit then held that these decisions were protected by the discretionary function exception, vacated the district court's judgment in favor of plaintiffs, and dismissed the case for lack of subject matter jurisdiction. *Id.* at 1531.

The government also relies on *Zumwalt v. United States,* 928 F.2d 951 (10th Cir.1991), and *Baum v. United States,* 986 F.2d 716 (4th Cir.1993), in support of its position that this court lacks jurisdiction. In *Zumwalt,* the Tenth Circuit affirmed the district court's dismissal of a suit by a hiker injured at Pinnacles National Monument in California. The hiker slipped on loose gravel, fell down an incline through the roof of a cave, and landed on the clay floor, thereby severely and permanently injuring himself. The Tenth Circuit held that the determination of trail maintenance and safety issues are policy decisions protected by the discretionary function exception. Similarly, in *Baum,* plaintiffs

---

6. In *Dalehite,* hundreds of persons were killed and a city leveled when fertilizer manufactured and shipped by contractors under "the general supervision, direction, control and approval" of the Army disastrously exploded while it was being loaded for export. 346 U.S. at 20, 73 S.Ct. at 960. The district court found that the United States negligently initiated the program, negligently designed and approved inadequate specifications, negligently failed to warn area residents of the dangers, and negligently supervised the fertilizer storage and shipment. *Id.* at 38–44, 73 S.Ct. at 969–72. The Supreme Court held that these findings were irrelevant. *Id.* at 42–43, 73 S.Ct. at 971. The Supreme Court ruled that the discretionary function exception to the FTCA barred the action, notwithstanding the negligence of the United States. *Id.* at 43–45, 73 S.Ct. at 971–73.

were injured in an automobile accident in which their vehicle penetrated a guard rail on a bridge over the Baltimore–Washington Parkway, causing them to fall to the roadway below. The Fourth Circuit held that the National Park Service's decisions regarding the maintenance of roadway guard rails are protected by the discretionary function exception.

## II.

■ Based on the above cases, this court will first examine whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. It is undisputed that the Department of Agriculture, through the Forest Service, maintains the Joyce Kilmer–Slickrock Wilderness ("Slickrock") pursuant to the Wilderness Act (the "Act"), 16 U.S.C. §§ 1131, et seq. Congress' primary motivation in establishing wilderness areas was to "guarantee[ ] that these lands will be kept in their original untouched natural state." 110 Cong. Rec. 17448 (statement of Rep. Cleveland); see 16 U.S.C. Sec. 1131(a). Congress was "very concerned that the wilderness areas be protected rather than exploited for commercial purposes ..." *Sierra Club v. Block,* 622 F.Supp. 842, 850 (D.C.Colo.1985). These basic premises are reflected in Congress' statement of policy in the Act:

In order to assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition, it is hereby declared to be the policy of the Congress to secure for the American people of present and future generations the benefits of an enduring resource of wilderness. For this purpose, there is hereby established a National Wilderness Preservation System to be composed of federally-owned areas designated by Congress as "wilderness areas", and these shall be administered for the use and enjoyment of the American people in such manner as will leave them unimpaired for future use

and enjoyment as wilderness, and so as to provide for the protection of these areas, the preservation of their wilderness character, and for the gathering and dissemination of information regarding their use and enjoyment as wilderness; and no Federal lands shall be designated as "wilderness areas" except as provided for in this chapter or by a subsequent Act.

16 U.S.C. § 1131(a). The definition of a "wilderness area" reflects these goals:

A wilderness, in contrast with those areas where man and his own works dominate the landscape, is hereby recognized as an area where the earth and its community of life are untrampled by man, where man himself is a visitor who does not remain. An area of wilderness is further defined to mean in this chapter an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined tap of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value.

16 U.S.C. § 1131(c).

The Slickrock area was designated in 1975. Pub.L. 93–622, § 3(a)(7), 88 Stat. 2097 (Jan. 3, 1975). In order to provide Forest Service employees with guidance in complying with the mandates of the Act, the Forest Service promulgated a comprehensive manual, called *Land and Resource Management Plan: 1986–2000, Nantahala and Pisgah National Forest ("Management Plan")*. The *Management Plan* enumerates five levels of maintenance activity in Slickrock. The parties agree that the Slickrock Creek Trail was to be maintained at Level 1 or 2.[7] With respect

---

7. The parties' agreement is based on the follow- ing language in the *Management Plan*: "Main-

to trails with a maintenance level of 1 or 2, the *Management Plan* provides as follows regarding maintenance activities for "hazard tree removal":

> Removal of tree that could fall across the trail. Fell only trees likely to fall on or across trail. Fell away from trail. Remove any slash from corridor. No hazard tree removal in wilderness.
>
> FREQUENCY: 2 years or less, depending on timber type.

[*See id.*, Table G–5, p. G–9].

Relying on the above language, the government first contends that because the Slickrock Creek Trail is in the Slickrock Wilderness, then the *Management Plan* mandates no tree removal whatsoever, i.e., "[n]o hazard tree removal in wilderness." Thus, from the government's viewpoint, plaintiffs can no longer argue that the government violated a mandatory regulation or directive; to the contrary, they would now be suing the government because of its compliance with this regulation or directive. Therefore, according to the government, plaintiffs' action must be dismissed.[8]

Plaintiffs respond that the specific language relied upon by the government, *i.e.*, "[n]o hazard tree removal in wilderness," simply does not apply to a trail in the wilderness. Rather, plaintiffs contend that the first part of the guideline applies to the trail, *i.e.*, "[f]ell only trees likely to fall on or across trail."

There is no definite answer to the dilemma presented by this language in the *Management Plan*. Each side makes a compelling argument for its position. On the one hand, the government's position is consistent with the Act's definition of "wilderness" and with the wilderness objectives of "solitude, physical and mental challenge, spirit of adventure and self-reliance," so that any trees—including rotten ones—should not be tampered with whatsoever. On the other hand, plain-

tiffs' argument that the trails in the wilderness are excluded from this guideline is somewhat persuasive. It does seem somewhat inconceivable that a regulation would prevent a rotten tree from being cut down when it is likely to fall on a trail and present a hazard to hikers. Nevertheless, it will not be necessary for the court to definitively resolve this linguistic issue. If the government is correct in its analysis that the *Management Plan* prohibits the cutting down of the tree at issue, then the government has indeed satisfied the first prong of the test that its conduct falls within the scope of the discretionary function exception. In that event, plaintiffs' case would have to be dismissed because, for the reasons to be discussed shortly, the government has easily satisfied the second prong of this test. If the court agrees with plaintiffs, however, then the first part of this directive must be examined further. Again, for the reasons that follow, the court finds that the government will prevail on this particular issue.

Assuming, *arguendo*, that plaintiffs are correct and that the trails in the wilderness area are exempt from the provision which states, "no hazard tree removal in wilderness," then the court must determine whether the first part of this guideline is mandatory. Again, that guideline provides as follows: "Fell only trees likely to fall on or across trail. Fell away from trail." [*See* Doc. 9, Ex. B, Table G–5, p. G–9]. In order to fully analyze the language employed in the guidelines with respect to Maintenance Levels 1 and 2, the language used with respect to Maintenance Level 3, 4, and 5 must also be reviewed. Regarding Maintenance Level 3, the guidelines provide:

> Fell *all* trees likely to fall on trail. Permissible to leave non-threatening snags. Prune dead or dangerous branches overhanging trail. *Dispose of slash and logs away from trail.*

---

tain trails at Maintenance Level 1 or 2 as described in Appendix G except maintain the Joyce Kilmer National Recreation Trail (Joyce Kilmer—Slickrock Wilderness) to Maintenance Level 4." [See Doc. 9, Ex. B, Table III–9, Trails Management 3(d), p. III–107].

8. Of course, the government readily acknowledges that, assuming the court agrees with this prong of its argument, then the government must also address the second prong of its argument—whether the challenged actions are the kind of conduct that the discretionary function exception was designed to shield. This issue will be dealt with shortly.

FREQUENCY: 1 year

[See id. (emphasis added)]. Regarding Maintenance Levels 4 and 5, the guidelines provide:

Fell *all* dead or dying trees within trail corridor. Prune dead or dangerous branches overhanging trail. Dispose of slash out of sight of trail.

FREQUENCY: 1 year or less

[See id. (emphasis added)]. Thus, comparing the guidelines with respect to Maintenance Levels 1 and 2 with those in Levels 3, 4, and 5, the court readily concludes that the guideline does not require the Forest Service to remove *all* trees likely to fall on a trail in Maintenance Levels 1 and 2. Rather, as the attorneys for the government have succinctly stated, these guidelines identify a "universe" of trees that *may* be removed. In other words, the guidelines do not require the Forest Service to remove any trees from the Slickrock Wilderness Trail. Instead, the guideline specifies that the only trees for which removal is permitted are those trees that are likely to fall on a trail. The court cannot envision how the guidelines could have been drafted any differently to allow the Forest Service the discretion to determine which trees, if any, to remove from the trails except perhaps by the addition of the word "discretion." And even then, the use of the word "discretion" would have been superfluous. Given the language employed in the other guidelines, it is unnecessary. The challenged act or omission did not violate a mandatory regulation or policy that allowed no judgment or choice. To the contrary, the guidelines used for Maintenance Levels 1 and 2 allowed the maximum discretion by the employees of the Forest Service.

Having therefore concluded that the government's conduct satisfies the first prong of the *Gaubert* test, the court must now turn next to whether the challenged action is the kind of conduct that the discretionary function exception was designed to shield. In considering this issue, the court is guided by the following language in the *Autery* case:

To decide on a method of inspecting potentially hazardous trees, and in carrying out the plan, the Park Service likely had to determine and weigh the risk of harm from trees in various locations, the need for other safety programs, the extent to which the natural state of the forest should be preserved, and the limited financial and human resources available. Indeed, the district court recognized this when it criticized the Park Service for elevating "the overriding policy considerations of protecting the trees and the natural state of the area" over "the safety of humans using the Park roadway." ... Although the district court may have disagreed with the balance struck by the Park Service, or believed that some other policy would have been better, the discretionary function exception is designed to protect against just this type of "judicial 'second-guessing.'" (citations omitted).

992 F.2d at 1531. The same can be said with respect to the decisions made by the Forest Service in the instant case. This court does not intend to decide which trees, if any, the Forest Service must cut down in order to minimize risk to hikers on the trail. Nor does this court intend to examine the Forest Service's method of inspecting potentially hazardous trees. Likewise, this court does not intend to decide how the Forest Service should warn hikers of the danger of falling trees. Plaintiffs' allegations regarding the Forest Service's hazardous tree inspection and removal procedures, and the decisions on how to comply with those inspections and procedures, are clearly within the scope of the discretionary function exception. The same is true with regard to plaintiffs' allegations of failure to warn of a hazardous condition. The decisions involved in developing a warning program would require balancing the mandates of Congress that the wilderness area be left in its natural state (and the related mandate that the wilderness area remain a region where visitors *perceive* it to be untrampled) against practical concerns about which warnings to disseminate and how best to do so. Again, these decisions fall within the scope of the discretionary function exception.

### III.

Therefore, plaintiffs' claims are barred by the discretionary function exception to the

FTCA, 28 U.S.C. § 2680(a), so that defendant's motion for dismissal [Doc. 8] and its renewed motion for dismissal [Doc. 17] must be GRANTED.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the United States' motion for dismissal [Doc. 8] and its renewed motion for dismissal [Doc. 17] be, and the same hereby are, GRANTED whereby this case is DISMISSED and summary judgment ENTERED in favor of defendant. *See* Rule 56, Federal Rules of Civil Procedure.