[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11694
Non-Argument Calendar

_____

D.C. Docket No. 7:10-cv-00107-HL


WILLIAM HOGAN,

Plaintiff - Appellant,

versus


U.S. POSTMASTER GENERAL,
U.S. POSTAL SERVICE,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 11, 2012)

Before MARTIN, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

William Hogan appeals the district court's order granting summary judgment to the United States on his claim for damages under the Federal Tort Claims Act (FTCA). Because we agree with the district court that Hogan's claim is barred by the discretionary function exception to the FTCA, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts of this case are undisputed. The United States Post Office branch in Lake Park, Georgia (Post Office) provides twenty-four hour access to post office boxes in its facility. Access is provided to customers even when the Post Office service counter is closed and even when no Post Office employees are on duty. Hogan receives his mail at a post office box in the Post Office.

On Saturday, March 28, 2009 Hogan went to the Post Office at around 8:00 p.m. to check his mail. It was raining at the time, and as Hogan stepped through the entryway into the Post Office lobby, he immediately slipped and fell due to water that had accumulated on the lobby floor. As a result of his fall, Hogan injured his back, hip, and jaw.

Hogan filed suit against the United States under the FTCA in the Middle District of Georgia, alleging that the Post Office should have been aware of the

2

dangerous condition presented by slippery floors and should have taken precautionary measures to ensure that the Post Office remained safe. The United States moved for summary judgment, arguing that on the facts alleged, the Post Office was not negligent under Georgia law. The United States then filed an amended motion for summary judgment, asserting that the district court lacked jurisdiction over the complaint because the Post Office's decision to maintain a twenty-four hour access facility fell within the discretionary function exception to the FTCA. The district court granted the amended motion for summary judgment, rendering moot the arguments about Georgia law on negligence made on behalf of the Post Office in the original motion. This appeal followed.

## II. Discussion

We address one issue: whether the discretionary function exception to the FTCA bars Hogan's suit against the United States. By arguing that Hogan's claim is governed by the discretionary function exception, the United States factually attacks our subject matter jurisdiction. U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009). Our review of factual attacks on the existence of subject matter jurisdiction is de novo. Id. We also review the facts in the light most favorable to the plaintiff. Id. (citation omitted).

A.

3

"The United States cannot be sued except as it consents to be sued." Powers v. United States, 996 F.2d 1121, 1124 (11th Cir. 1993). Congress, through the FTCA, waived the sovereign immunity of the United States in certain limited circumstances, and gave the federal district courts jurisdiction over certain tort actions against the United States. See 28 U.S.C. § 1346(b); Powers, 996 F.2d at 1124. Exempted from this limited waiver of sovereign immunity, however, is "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The discretionary function exception is intended to prevent the courts from second-guessing administrative decisions grounded in social, economic, or political policy through the medium of an action in tort." Aviation Underwriters, 562 F.3d at 1299 (quotation marks omitted).

A precise definition of "discretionary" for purposes of applying the discretionary function exception does not exist. Id. Instead, in determining whether the discretionary function exception applies, courts administer a two-part test. See United States v. Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991).

First, the court must examine whether the challenged conduct is

4

discretionary in nature or whether the conduct involves an element of judgment or choice.  Second, the court must decide whether that judgment is of the kind that the discretionary function exception was designed to shield, i.e. whether it is susceptible to policy analysis.

Aviation Underwriters, 562 F.3d at 1299 (quotation marks omitted).  "A function is non-discretionary if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow where the employee has no rightful option but to adhere to the directive."  Id. (quotation marks omitted).

1.

"Before we address whether the government's conduct violated a mandatory regulation or policy, we must determine exactly what conduct is at issue."  Autery v. United States, 992 F.2d 1523, 1527 (11th Cir. 1993).  Hogan argues that "[t]he conduct at issue in this case is the following of the safety procedures [related to cleanup of wet floors] in the Post Office."  The government, on the other hand, contends that "the [conduct] at issue . . . [is] whether to allow twenty-four hour access to post offices [sic] boxes, and under what conditions . . . ."

In deciding what conduct is at issue here, a review of the facts and holding of Autery is instructive.  In that case, Roy Autery was killed and Charlotte Schreiner was injured when a tree fell on their car as they drove through Great Smokey Mountain National Park (GSMNP).  Autery, 992 F.2d at 1524.  Autery's

5

estate and Schreiner (the plaintiffs) brought a negligence action against the United States under the FTCA. Id. After a bench trial, the district court entered judgment for the plaintiffs. Id. The government appealed, and we reversed. In pertinent part, we took issue with the plaintiffs' and the district court's description of the "conduct at issue" as "the park's failure to carry out the mandates of its then existing policy of identifying and eliminating known hazardous trees." Id. at 1527. This focus was "too narrow," we said. Id. We went on to clarify that it is "the governing administrative policy . . . that determines whether certain conduct is mandatory for purposes of the discretionary function exception." Id. at 1528. Because no statutes, regulations or administrative policies mandated that the Park Service inspect for hazardous trees in a specific manner, the Park Service's decision to employ a particular inspection procedure was necessarily made pursuant to the grant of discretion given to the Secretary of the Interior "to provide . . . for the destruction of plant life as may be detrimental to the use of the national parks," pursuant to 16 U.S.C.A. § 3. Id. (quotation marks and alterations omitted). Thus the conduct at issue was the Park Service's "discretion to design and implement a policy for evaluating and removing trees from GSMNP," not its failure to carry out the mandates of its then existing policy. Id.

As in Autery, Hogan's characterization of the conduct here is too narrow.

6

Relying entirely on provisions in the United States Postal Service Maintenance Handbook MS-10 regarding cleanup of wet floors, Hogan argues that Post Office employees had no judgment or choice but to prevent the accumulation of water in the entryway, and therefore the conduct at issue is the Post Office's failure to follow these provisions.  In support of his argument, Hogan notes that "[t]here is no exception in the handbook for conditions that arise after normal business hours."

Even if there is no exception set out in the handbook, however, neither is there an express statement that the provisions in the handbook do apply after business hours.  Lacking a statute, regulation, or administrative policy mandating cleanup of accumulated water after normal business hours, the existence (or non-existence) of a procedure for after-hours water cleanup was made pursuant to the local postmaster's discretion to keep the Post Office lobby open to the public after hours.  See Postal Operations Manual (POM) § 126.44 (July 2002) ("At the postmaster's discretion, when no one is on duty, lobbies may remain open to allow customers access to Post Office boxes and self-service equipment, provided that customer safety, security provisions, and police protection are deemed adequate by the Inspection Service.").  Thus, under Autrey, the "governing administrative policy" and "conduct at issue" here is the postmaster's decision to maintain

7

twenty-four hour customer access to the Post Office lobby and the decision to maintain certain safety procedures in connection with that twenty-four hour access. See Autrey, 992 F.2d at 1527–28.

2.

Having identified the conduct at issue as the postmaster's discretion to maintain twenty-four hour customer access to the Post Office lobby, the remaining question in Hogan's appeal is straightforward. Under the first prong of the two-prong test for determining if the discretionary function exception applies, "the court must examine whether the challenged conduct is discretionary in nature or whether the conduct involves an element of judgment or choice." Aviation Underwriters, 562 F.3d at 1299 (quotation marks omitted). As interpreted by this Court,

> Under the first part of the test, the relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner. . . . Only if a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard, will a government employee's conduct not fall within the discretionary function exception.

Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997) (citation and quotation marks omitted). The controlling regulation here is POM § 126.44, which provides in relevant part that "[a]t the postmaster's discretion, when no one

8

is on duty, lobbies may remain open to allow customers access to Post Office boxes and self-service equipment, provided that customer safety, security provisions, and police protection are deemed adequate by the Inspection Service." Id. Contrary to Hogan's argument, nothing about POM § 126.44 suggests that it mandates the specific procedures for wet floor maintenance contained in the Postal Service Maintenance Handbook. Therefore a decision, if any, to mandate procedures for after hours water cleanup in the Post Office lobby is "discretionary" within the meaning of the discretionary function exception and the first prong of the discretionary function exception test is satisfied. Cf. Hughes, 110 F.3d at 768 (interpreting POM § 126.44's nearly identical predecessor to determine that its "general guidelines do not mandate a specific course of conduct regarding security at a post office").

3.

The second prong of the discretionary function exception test requires us to "decide whether [the] judgment is of the kind that the discretionary function exception was designed to shield, i.e. whether it is susceptible to policy analysis." Aviation Underwriters, 562 F.3d at 1299 (quotation marks omitted). In his brief Hogan expressly disavowed a "need to address the second part of the test." Issues not briefed on appeal are deemed abandoned. Denney v. City of Albany, 247 F.3d

9

1172, 1182 (11th Cir. 2001).  Thus, we decline to decide this issue.

## III. CONCLUSION

For these reasons, the district court's determination that Hogan's claim was

barred by the discretionary function exception to the FTCA is

**AFFIRMED.**